## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ING BANK N.V., § | |
| § | |
| Plaintiff § | CIVIL ACTION NO. |
| § | |
| v. § | JUDGE |
| § | |
| M/V DIAMANTINA, IMO No. § | MAGISTRATE JUDGE |
| 9494137, her engines, tackle, § | |
| equipment, furniture, appurtenances, § | ADMIRALTY |
| etc., *in rem* § | |
| § | |
| Defendant | |

## VERIFIED COMPLAINT

NOW COMES, plaintiff, ING Bank N.V. ("ING") through undersigned counsel, and files this Verified Complaint against defendant, the M/V DIAMANTINA, IMO No. 9494137, her engines, tackle, equipment, furniture, appurtenances, etc. (the "DIAMANTINA") *in rem*, for damages and maritime arrest, and upon information and belief, avers as follows:

### Jurisdiction and Venue

1.

This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and Federal Rule of Civil Procedure 9(h).

2.

Venue is proper in this District in accordance with Rule C as the DIAMANTINA is or will be within the physical jurisdiction of this Court during the pendency of this action.

**Parties**

3.

At all material times, ING was and is a banking and financial services corporation or business entity organized and existing pursuant to the laws of The Netherlands, with a place of business in Amsterdam, The Netherlands. As more fully set forth herein, ING is an assignee of certain accounts, assets and maritime liens of O.W. Bunker Middle East DMCC (hereafter "OW Bunker"), including the account receivable and corresponding maritime lien owed by the DIAMANTINA, and therefore prosecutes this admiralty claim as the holder of OW Bunker's maritime lien against the DIAMANTINA as more fully set forth herein.

4.

ING is the coordinator, agent, and security agent under that certain US$ 700,000,000.00 Multicurrency Revolving Borrowing Base Facilities Agreement, dated December 19, 2013 (the "Credit Agreement"), and related guaranty, pledge, and security agreements, including that certain English Omnibus Security Agreement, dated December 19, 2013 (the "Security Agreement").

5.

OW Bunker is a borrower and guarantor of the obligations owing under the Credit Agreement and is in default of those obligations.

6.

OW Bunker is also a party to the Security Agreement, pursuant to which it absolutely assigned all of its rights, title and interests as of December 19, 2013, in certain assets, including customer accounts receivable for bunker deliveries, to ING.

7.

OW Bunker has assigned to ING all of its rights, title and interests, including its right to

institute this action and enforce its maritime liens against the DIAMANTINA, in the amounts owed to OW Bunker for bunker deliveries made to the DIAMANTINA, as more fully described *infra*. For clarity, OW Bunker and ING will collectively be referred to as "OW Bunker" throughout the remainder of this pleading, unless otherwise indicated.

8.

At all material times, defendant, the DIAMANTINA was and is, upon information and belief, a general cargo ship, owned by Neda Maritime Agency Co. Ltd. ("Neda") and chartered by China National Chartering Co. Ltd. ("China Chartering").

**Unpaid Bunkers Supplied and Delivered to the DIAMANTINA**

9.

OW Bunker contracted to provide bunkers and related barging services to the DIAMANTINA in Singapore, which bunkers were initially ordered by China Chartering, the charterer of the DIAMANTINA. This contract to provide bunkers is evidenced by a Sales Order Confirmation No. 170-11879, dated October 7, 2014, a true and correct copy of which is attached as Exhibit A, hereafter the "Confirmation".

10.

The Confirmation, as well as the sale and delivery of the marine fuels to the DIAMANTINA, were subject to the OW Bunker Group Terms and Conditions of sale for Marine Bunkers, Edition 2013, a true and correct copy of which is attached as Exhibit B, hereafter "General Terms". More specifically, the Confirmation provided in relevant part, as follows:

> The sale and delivery of the marine fuels described above are subject to the OW Bunker Group's Terms and Conditions of sale(s) for Marine Bunkers. The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of said general terms to you as 'Buyer' and to O.W. Bunker Middle East (Dubai) as 'Seller'.

3

> The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http://owbunker.com/wp-content/uploads/2013/12/OWB_GTC_ValidFrom01092013.pdf

(Exh. A, Confirmation, p. 2.)

11.

Article B.1 of the General Terms defines the term "Buyer" to mean the vessel supplied and, jointly and severally her master, owners, managers/operators, disponent owners, time charters, bareboat charterers, and charterers. (Ex. B, General Terms, p. 2, art B.1.) As discussed *infra*, on or about October 9, 2014, the DIAMANTINA accepted marine bunkers from OW Bunker, pursuant to the Confirmation. Accordingly, the DIAMANTINA, her charterer, China Chartering, and her owner, Neda, fall within the definition of Buyer and are, therefore, bound and obligated jointly and severally to the Confirmation and to the General Terms, which General Terms were incorporated in the Confirmation by express reference and adoption. See *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011).

12.

Article I.3(iv) of the General Terms provides as follows:

> Where [DIAMANTINA] fails to pay timely, [OW Bunker] has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim…

(Exh. B, General Terms, p. 7, art. I.3).

13.

Article I.9 of the General Terms provides as follows:

> Where Bunkers are supplied to [DIAMANTINA], in addition to any other security, the Agreement is entered into and the Goods are supplied upon the faith and credit of [DIAMANTINA]. It is agreed and acknowledged that the sale of Bunkers to [DIAMANTINA] and/or their acceptance on [DIAMANTINA] create a maritime lien over [DIAMANTINA] for the price of the Bunkers (and all interest and costs

4

payable in respect thereof; including but not limited to the reasonable attorney's fees), such maritime lien afforded to [OW Bunker] over the [DIAMANTINA]. In any event any applicable Law shall not prejudice the right of the maritime lien of [OW Bunker] afforded hereunder or by any other applicable Law, be it of the place of delivery, the flag of the Vessel, or the place of jurisdiction and/or arrest of the Vessel, or otherwise howsoever.

(Exh. B, General Terms, p. 8, art. I.9).

14.

Article P.5 of the General Terms provides as follows:

The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien, regardless of the country in which [OW Bunker] takes legal action. [OW Bunker] shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

(Exh. B, General Terms, pp. 11 – 12, art. P.5).

15.

In filing this Verified Complaint, OW Bunker exercises its discretion to proceed against the DIAMANTINA under the substantive laws of the General Maritime Law of the United States of America as well as the Commercial Instrument and Maritime Liens Act, 46 U.S.C. §§ 31303 *et seq*. and under the procedural laws of the Federal Rules of Civil Procedure, including the Supplemental Rules for Admiralty and Maritime Claims, as well as the Local Rules of the United States District Court for the Southern District of Texas, Houston Division.

16.

On October 7, 2014, OW Bunker issued the Confirmation for the account of the Master and/or Owner and/or Charterers and/or MV DIAMANTINA and/or China National Chartering Co. Ltd. and indicated that it would provide 200.00 metric tons of Fueloil 380-CST 3.5% marine bunkers to the DIAMANTINA in Yosu / Busan, South Korea, with an estimated delivery date of October 9, 2014.  (Exh. A, Confirmation, p. 1.)

17.

On October 9, 2014, pursuant to the Confirmation and the General Terms, the DIAMANTINA accepted the delivery of 200.00 metric tons of Fueloil 380-CST 3.5% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit C.

18.

On October 9, 2014, OW Bunker issued an invoice to the DIAMANTINA and / or owners /Charterers, which was addressed to China Chartering, referencing Confirmation No. 170-11879 in the amount of US$ 121,600.00 for 200.00 metric tons of Fueloil 380-CST 3.5% marine bunkers delivered to the DIAMANTINA in Yosu / Busan, South Korea, to be paid on or before November 7, 2014, a true and correct copy of which is attached hereto as Exhibit D, hereafter "Invoice." As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the DIAMANTINA in breach of the Confirmation and General Terms, and plaintiff is accordingly owed US$ 121,600.00 for the bunkers, fees and charges as aforesaid.

19.

Pursuant to General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied. (Exh. B, General Terms, p. 7, art. I.5.)

20.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account. (*Id*., art.

I.7.). Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the Invoice, including attorney's fees and costs associated with this civil action, and pursuant to the General Terms, the DIAMANTINA, Neda and China Chartering remain jointly and severally liable for all amounts due and owing to OW Bunker.

21.

As of the date of this filing, ING is owed the following amounts for unpaid bunkers delivered to the DIAMANTINA:

| | | |
|---|---|---|
| A. | Invoice | $ 121,600.00 |
| B. | Accrued Interest | $ 48,275.20 |
| C. | Administrative Fees | $ 300.00 |
| D. | Accrued and Anticipated Attorney's Fees | $ 30,000.00 |
| **TOTAL** | | **US$ 200,175.20** |

**Request for Arrest of the DIAMANTINA
Pursuant to Supplemental Admiralty Rule C**

23.

Upon information and belief, the DIAMANTINA is or will be within this District during the pendency of this admiralty and maritime claim to recover for necessaries provided by OW Bunker to the DIAMANTINA.

24.

Pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, ING is entitled to arrest the DIAMANTINA to satisfy ING's claims, including but not limited to pre-judgment interest, costs, expenses, and attorneys' fees as

alleged with more specificity *supra*.

25.

ING agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the arrest and attachment of the aforesaid DIAMANTINA.

All and singular the foregoing premises are true and correct within the admiralty jurisdiction of this Honorable Court.

**WHEREFORE**, plaintiff, ING Bank N.V., prays:

1. That this Verified Complaint be deemed good and sufficient;

2. That process in due form of law, according to the rules and practices of this Honorable Court, issue against the M/V DIAMANTINA, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, by way of arrest pursuant to Supplemental Admiralty Rule C, and that all persons claiming interest in said vessel be required to appear and to answer under oath, all and singular the matters aforesaid;

3. That after due proceedings are had, there be judgment entered in favor of plaintiff, ING Bank N.V., and against defendant, the DIAMANTINA, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, requiring defendant to pay damages to plaintiff in the amount of US$ 200,175.20 for bunkers delivered to the DIAMANTINA, and all other damages as may be proven at trial, with prejudgment interest, attorney's fees, and all costs of these proceedings; and

4. That this Court grant ING Bank such other and further relief as may be just and

proper.

Respectfully submitted:


*/s/ James D. Bercaw*
**JAMES D. BERCAW, # 20492**
**ROBERT J. STEFANI, # 19248**
**LAURA E. AVERY, # 35636**
**KING, KREBS & JURGENS, P.L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
E-Mail:     jbercaw@kingkrebs.com
                  rstefani@kingkrebs.com
                  lavery@kingkrebs.com

***Attorneys for ING Bank N.V.***


**PLEASE SERVE:**

**The Master of the M/V DIAMANTINA, IMO No. 9494137**
**And Issue a Warrant for the Arrest of the M/V DIAMANTINA**